The MJK FAMILY LLC, Air Banks, LLC, Windsong LLC, Mark II Aviation, LLC, Convenienso, LLC, S4air LLC, National City Bank as Trustee for The David L. Hayes IRA, Robert Skandalaris, and Don Defosset, Plaintiffs,

v.

CORPORATE EAGLE MANAGEMENT SERVICES, INC., and Richard M. Nini, Defendants.

Civil No. 09–12613.

United States District Court, E.D. Michigan, Southern Division.

Dec. 21, 2009.

Michael C. Simoni, P. Rivka Schochet, Richard C. Sanders, Miller, Canfield, Detroit, MI, for Plaintiffs.

Frederick A. Berg, Kotz, Sangster, Rebecca M. Decoster, Kotz, Sangster, Wysocki and Berg, P.C., Detroit, MI, for Defendants.

*OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' COUNSEL [17] AND DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' REPLY [25]*

JOHN FEIKENS, District Judge.

Plaintiffs are Members of Corporate Eagle Jet, LLC ("CEJ"), a company formed and managed by Defendants. Compl. ¶¶ 20–24. Defendant Corporate Eagle Management Services ("CEMS") retained the law firm of Kotz, Sangster, Wysocki, and Berg, P.C. ("KSWB") in connection with the capitalization of CEJ and "matters relating to" CEJ. Subscription Agreement ¶ 8. Plaintiffs contend that KSWB *also* represented Plaintiffs, as Members of CEJ. Motion at 4. Plaintiffs specifically allege that two named partners of KSWB—Frederick A. Berg[1] and Greg Wysocki—engaged in conduct that mandates disqualification of KSWB as counsel for Defendants in this action. First, Plaintiffs contend that at least some of the Plaintiffs believed that KSWB was representing Plaintiffs' interests, as Members of CEJ. Alternatively, Plaintiffs allege that Mr. Wysocki acted as a negotiator "on behalf of Plaintiffs, CEJ and Nini, [either] formally or informally," which role Plaintiffs claim must bar his firm, KSWB, from representing Defendants in this action. Finally, Plaintiffs assert that Mr. Wysocki is a "key witness" in this action, and that, as such, the entire KSWB firm must withdraw its representation of Defendants.

## I. BACKGROUND

### A. Plaintiffs' Allegations

In support of their Motion, Plaintiffs assert the following, by way of affidavits supplied by the Principals of three named—Plaintiff entities:[2]

1. Michael J. Kowalski[3] claims that, while he was a member of CEMS's Board of Directors, "Richard Nini and others represented to [Kowalski] on several occasions that Gregory Wysocki was the attorney for CEJ." Kowalski Aff. ¶ 8.

2. Mr. Wysocki participated in a December 19, 2008 conference call, in which Mr. Nini and some members of CEJ also participated, to discuss CEJ's financial condition and outlook. On January 22, 2009, Mr. Wysocki sent a follow—up letter to the Members of CEJ. Plaintiffs contend that in that letter Mr. Wysocki "appeared to act as a mediator between Nini and the Members of CEJ" and "provided advice to the Members [of CEJ] with respect to CEJ's financial condition and partial liquidation." Kowalski Aff. ¶¶ 10–11; Hayes[4] Aff. ¶¶ 7–8; Boll Aff. ¶¶ 7–8.

---

1. Although Plaintiffs mention Mr. Berg by name, they have provided no specific allegations of actions taken by Mr. Berg that would warrant disqualification.

2. order to preserve "context", the additional facts Plaintiffs presented in their Reply, most of which are directly responsive to Defendants' factual assertions, will be presented below.

3. Mr. Kowalski is the Manager of Plaintiff The MJK Family, LLC.

4. David L. Hayes supplied an affidavit in support of Plaintiffs' Motion, Mr. Hayes is the beneficiary of The David L. Hayes IRA, a Plaintiff through its Trustee, National City Bank.

3. March 4, 2009, Minutes of a Special Meeting of the Board of Directors of CEMS state that Lucy R. Benham represented CEMS, and Gregory Wysocki was present as "attorney for Corporate Eagle Jet, LLC."

4. At an April 29, 2009, CEMS Board of Directors meeting, Lucy Benham identified herself as CEMS's attorney, and Mr. Wysocki allegedly stated, "I represent the members of Corporate Eagle Jet." Hayes Aff. ¶¶ 12–14.

5. Greg Boll[5] also attended the April 29, 2009 meeting. Mr. Boll does not allege that Mr. Wysocki told him that he represented the Members' interests, but Mr. Boll nevertheless "had the impression that Mr. Wysocki was representing [his] interests as a [M]ember of CEJ" at that meeting, based on the following: (a) Ms. Benham's status as CEMS's attorney at that meeting; (b) his knowledge that Mr. Wysocki was an attorney; and (c) the contents of the January 22, 2009 letter from Mr. Wysocki.

6. It is "apparent" to some Plaintiffs that KSWB drafted the Subscription Agreement, "including the provisions that are alleged to be misleading in the Plaintiffs' Complaint." Plaintiffs claim that KSWB's role in drafting that agreement supports their position that Mr. Wysocki will be a key witness in this action. Motion at 5 n. 8; Kowalski Aff. ¶¶ 4–5; Boll Aff. ¶¶ 4–5; Hayes Aff. ¶¶ 4–5.

Plaintiffs submit that these events demonstrate that they "worked closely with [Mr.] Wysocki and relied upon his and his firm's legal representation." Motion at 10. Accordingly, they argue, the Plaintiffs, as individual Members of CEJ, are or were clients of KSWB, and KWSB is therefore barred from representing Defendants in this action. Plaintiffs rely upon five Michigan Rules of Professional Conduct to support their Motion:

*Rule 1.7* generally prohibits a lawyer from representing a client if the representation will be directly adverse to another *existing client*. Plaintiffs argue that CEJ is an existing client because KSWB "provided legal advice to CEJ and its Members with respect to the formation, operation, and management of CEJ." They further submit that, "[w]hether or not the [attorney-client relationship] was formal, and whether or not Plaintiffs were billed for these services is of no import." Motion at 7. *Rule 1.9* prohibits a lawyer from representing a client in the same or substantially related matter in which that client's interest is materially adverse to that of a *former client* without first obtaining the former client's consent. Plaintiffs contend that they are, "at a minimum former clients" of KSWB, which they believe bars KSWB from representing Defendants in this matter. Motion at 11.

*Rule 2.2* establishes ethical rules related to attorneys who act as *intermediaries*. If an attorney acts as an intermediary for two clients, and the clients fail to reach a resolution, the lawyer shall withdraw as an intermediary. Plaintiffs do not allege that there was a specific agreement under which Mr. Wysocki agreed to serve as an intermediary between the parties. Instead, Plaintiffs claim that Mr. Wysocki should be deemed to have acted as an intermediary because he "in effect, negotiated on behalf of all interested parties" through his attendance at CEMS board meetings

---

**5.** Mr. Boll is the Manager of Plaintiff S4Air, LLC.

"as counsel to CEJ" and his alleged attempts "to bring [the parties] together and advise them" about possible resolutions to their differences. Specifically, Plaintiffs refer to Mr. Wysocki's letter dated January 22, 2009, as evidence of his role as intermediary. Motion at 12. *Rule 3.7* generally prohibits a lawyer from acting as an advocate at a trial in which he is likely to be a *necessary witness*. Plaintiffs contend that Wysocki is a "key witness"—"perhaps the only witness who has knowledge of a number of business activities relating to management of CEJ by Defendants, actions taken by the Defendants, and those taken by the Plaintiffs, and … the discussions regarding the … sale of the aircraft owned by CEJ." Motion at 14.

*Rule 1.10* imputes disqualification on a *law firm* if a lawyer in that firm is disqualified under Rule 1.7, 1.8(c), 1.9(a) or (c), or 2.2. Plaintiffs contend that Mr. Wysocki is prohibited from representing Defendants under Rules 1.7(a) and (b), 1.9(a), and 2.2(c)—each of which, they claim, requires disqualification of the entire KSWB firm. Motion at 15.

## B. Defendants' Factual Allegations [6]

Defendants assert the following relevant facts in opposition to Plaintiffs' Motion:

1. Plaintiffs S4AIR, LLC (and its principal Greg Boll) and Windsong LLC (and its principal Walter Knysz) had separate legal counsel, which they consulted in connection with their investment in CEJ. Nini Aff. ¶¶ 23, 25.

2. Plaintiffs each signed the Subscription Agreement and Operating Agreement "without ever having spoken to any representative of KSWB." *See* Response at 6; Wysocki Aff. ¶ 9. In-

deed, no attorney at KSWB had any contact with any Member of CEJ until the December 19, 2008 teleconference. *Id.*

3. On or about February 10, 2009, several Plaintiffs sent a letter by Federal Express to Defendants. The Federal Express label listed Plaintiffs' current counsel, Miller Canfield Paddock and Stone ("Miller Canfield"), as the return address. Thus, Defendants argue that Plaintiffs had "engaged Miller Canfield to give legal assistance and advice to them as members of [CEJ] at that time. . . ." Wysocki Aff. ¶ 18; Response, Ex. 7.

4. Plaintiffs did not consult with KSWB regarding letters they sent to Defendants on February 10, 2009, and February 27, 2009, nor did Plaintiffs consult with KSWB regarding "any of the concerns and proposals" set forth therein. Wysocki Aff. ¶¶ 18–19.

5. Mr. Wysocki "clearly and unequivocally" told the CEJ Members that he "represented [CEMS] in its capacity as the sole manager of [CEJ]." Wysocki Aff. ¶ 13.

6. Mr. Wysocki states that, at no time did any CEJ Member (i) ask him to represent them in any matter; (ii) provide him with any confidential information; (iii) have a private meeting or communication with him. Wysocki Aff. ¶ 29.

7. Mr. Wysocki states that an unidentified Member or Members of CEJ accused him personally of participating in securities fraud against the Members of CEJ. Wysocki Aff. ¶ 13. In light of this accusation, Mr. Wysocki submits that it is "incomprehensible" that any Plaintiff would have "any

---

**6.** In their Response, Defendants seized the opportunity to present a wealth of "facts" wholly unrelated to the instant Motion. I have included only the relevant facts here.

understanding or desire that [Wysocki] was or should be representing any individual [M]ember of [CEJ]...." Wysocki Aff. ¶

8. Mr. Wysocki had no personal contact with any Member of CEJ between the December 2008 call and the January 22, 2009 letter. He was not asked to, nor did he choose to "undertake the role of mediator between Nini/[CEMS] and the [M]embers of [CEJ]." No Member of CEJ requested that Mr. Wysocki provide CEJ with legal representation, and no Member of CEJ provided Mr. Wysocki with confidential information. Wysocki Aff. ¶ 17.

9. Contrary to the affidavits of Mr. Hayes and Mr. Boll, each of whom claim that Mr. Wysocki told them at the April 29, 2009 CEMS Board Meeting that he represented their individual interests, Mr. Wysocki states he did not attend that meeting. Wysocki Aff. ¶ 26. The meeting minutes do not list Mr. Wysocki as being in attendance. Response, Ex, 14,

10. The Minutes from the April 29, 2009 CEMS Board Meeting clarify Mr. Wysocki's role:

[Mr. Kowalski] explained that his recollection was that GREGORY WYSOCKI stated that he represented [CEJ] and [CEMS]. LUCY R. BENHAM, [CEMS's] attorney, explained that GREGORY WYSOCKI is [CEJ's] attorney and only represents [CEMS] to the extent it is acting as the Manager of [CEJ]. MR. WYSOCKI does not represent [CEMS] otherwise, **nor does he represent the individual members of [CEJ]**. April 29, 2009 CEMS Board Minutes, Response, Ex. 14 (emphasis added).

11. Mr. Wysocki also acknowledges two other communications with the Members of CEJ. First, he participated in a telephone conference with Nini, representatives of the CEJ Members, the directors of CEMS, and Ms. Benham (counsel for CEMS) on May 11, 2009. Second, he sent an email on May 11, 2009 to CEJ Members, advising them to notify him, as legal representative of CEMS, in the event that the Members elected to seek *ex parte* judicial relief to stop CEMS's sale of an aircraft owned by CEJ. He received no communication from any Member in response to this correspondence. Wysocki Aff. ¶ 27.

12. Finally, Defendants assert that Plaintiffs expressly acknowledged that KSWB represents Defendants—and not Plaintiffs—and waived any conflicts of interest. The Subscription Agreement, ¶ 8, provides;

*Legal Counsel.* The Manager [CEMS] of the LLC [CEJ] has retained Kotz, Sangster, Wysocki and Berg, P.C. ("KSWB") as legal counsel ("Legal Counsel") in connection with the offering of the Units and expects to retain KSWB in connection with matters relating to the LLC. ***KSWB has not and will not represent the Subscriber in connection with the formation or reformation of the LLC, or any dispute which may arise between the members of the LLC on one hand and the Manager of the LLC, the Manager(s) of such Manager, the LLC and/or any of their affiliates (collectively the "Management") on the other hand ("Fund Legal Matters").*** The Subscriber will, if Subscriber desires counsel on a Fund Legal Matter, retain Subscriber's own independent counsel with respect thereto and will pay all fees and expenses of such independent counsel. The Subscriber agrees that KSWB

may represent the Management in connection with any and all Fund Legal Matters (including any dispute between the Management and the Subscriber or any other member of the LLC)and waives any present or future conflict of interest with Legal Counsel regarding Fund Legal Matters.

(emphasis in original). In addition, Exhibit C to the Subscription Agreement, entitled "Risk Factors," cautions that "[t]he Manager [CEMS] and the LLC [CEJ] are being represented in this transaction by the same legal counsel. Consequently, the Subscriber should retain its own independent counsel." (emphasis added).

13. The Operating Agreement § 10.19 also states that KSWB represents CEJ, advises Members to seek advice from independent counsel, and waives claims against KSWB for conflicts regarding the Operating Agreement or its preparation.

## C. Plaintiffs' Reply [7]

In their Reply brief, Plaintiffs acknowledge (for the first time) the conflict of interest provisions of the Subscription Agreement and Operating Agreement. They dispute, however, whether the risks associated with KSWB's dual representation (of CEMS and CEJ) were sufficiently disclosed to properly serve as a "waiver" of the conflict between CEMS and CEJ.

In addition, Plaintiffs have provided supplemental affidavits from the Principals of several Members, supplying the following "new" relevant facts:

1. Mr. Boll acknowledges that "[n]o specific representations" were made to him regarding Mr. Wysocki's representation, but claims that his "understanding of the situation" was that Mr. Wysocki acted as counsel to "[CEJ], including its Members, and ... [CEMS] in the role of Manager." Boll Reply Aff. ¶¶ 9–10.

2. Mr. Boll acknowledges that the Subscription Agreement included a paragraph addressing conflicts of interest, and that under that paragraph, KSWB was to represent both CEJ and CEMS. He claims, however, that he was not provided with "disclosure of the potential conflicts presented by the concurrent representation by one law firm of both the LLC and the Manager." Boll Reply Aff. ¶ 12. Mr. Boll also acknowledges that the Operating Agreement disclosed that KSWB represented CEJ and CEMS with respect to the "initial transaction", but did not did not disclose information about a "continuing conflict of interest." Boll Reply Aff. ¶ 13. Mr. Boll concludes that no one "ever explained to [him] the nature and implication of the 'conflict of interest' referred to in the documents in any detail so that [he] understood why independent counsel would be required." Boll Reply Aff. ¶ 15.

3. Similarly, Robert Banks,[8] who first filed an affidavit in support of Plaintiffs' Reply, echoed some of Mr. Boll's sentiments: "Mr. Wysocki ... did not confer with me to explain the nature and implication of the conflict of interest that existed by his concurrent rep-

---

**7.** In Plaintiffs' belated Reply brief, they have responded to Defendants' irrelevant facts with many of their own unnecessary (and unhelpful) facts. Again, I will present only the facts that are directly relevant to the instant Motion. The rest are left for the parties to sort out and present with supporting "proof" in dispositive motions, if appropriate, or at trial.

**8.** Mr. Banks is Sole Member of Plaintiff Air Banks, LLC.

resentation [of CEJ and CEMS] and why independent counsel might be necessary." Banks Aff. ¶ 6.

4. Mr. Banks claims that, at some CEMS Board Meeting (date not supplied), he asked Mr. Nini why CEJ did not have its own attorney, "as opposed to using Mr. Wysocki who was **clearly representing [CEMS]**." (emphasis added). Mr. Nini allegedly stated that he had appointed Mr. Wysocki as attorney for CEJ, and Mr. Wysocki "would act" on "our" behalf. Banks Aff. ¶ 9.

5. Mr. Banks alleges that CEJ paid some legal expenses for services provided by Mr. Wysocki. Banks Aff. f 9.

6. Mr. Banks describes Mr. Wysocki's participation in the December 19, 2008 conference call; "Mr. Wysocki conducted the call, not Mr. Nini"; "Mr. Wysocki refused to listen to any suggestions made by the Members."; "Mr. Wysocki dictated an ultimatum to the Members for Mr. Nini, without considering any other options to improve the prospects of [CEJ]" and "unreasonably refused" to consider the Members' requests to "explore alternatives." Banks Aff. ¶¶ 10–11.

7. Despite Mr. Banks's perceptions of Mr. Wysocki's role during the December 19, 2008 conference call, Mr. Bank claims that Mr. Wysocki "appeared to act as a mediator" between Mr. Nini and the CEJ Members in his January 22, 2009 follow—up letter. Banks Aff. ¶ 12. Notwithstanding Mr. Wysocki's alleged "intermediary" role, Mr. Banks inconsistently states that, the events (apparently the December 2008 call and the January 2009 letter) "finally and obviously disclosed" that Mr. Wysocki was operating under "a

serious conflict of interest" that precluded him from acting in the best interests of CEJ or its Members. Banks Aff. ¶ 13.

8. Mr. Hayes stated that, by the time of the April 29, 2009 CEMS Board meeting, "the dispute between the Members and Mr. Nini was apparent." Hayes Reply Aff. ¶ 5. Mr. Hayes further states that the minutes of that meeting are inaccurate to the extent that they imply that Lucy Benham explained that Mr. Wysocki did not represent the individual Members of CEJ. Hayes Reply. Aff. ¶ 7. Mr. Kowalski concurs, adding, "I do not recall a statement by anyone at that meeting that Mr. Wysocki does not 'represent the individual members of [CEJ].' Indeed, the Minutes do not attribute that statement to anyone." Kowalski Reply Aff. ¶ 10. Finally, Mr. Kowalski notes that he (as a CEMS Board member) did not review or approve the April 29, 2009 CEMS Board meeting minutes. Kowalski Reply Aff. ¶ 10.

9. Mr. Kowalski states that Mr. Wysocki "always" stated that he represented "Corporate Eagle Jet." [9] From that statement, Mr. Kowalski allegedly "understood" that such representation "included legal representation" of "all of the Members of [CEJ]." Kowalski Reply Aff. ¶ 3. In fact, Mr. Kowalski claims to have "repeatedly" asked Mr. Wysocki ("and others") who he represented, which Mr. Wysocki answered "I represent Corporate Eagle Jet." Mr. Kowalski would then ask, "What does that mean?" Mr. Kowalski does not state what Mr. Wysocki answered, but claims he "was not told that it meant that [Mr. Wysocki] did

---

**9.** According to Mr. Kowalski, in addition to "always" claiming to represent CEJ, Mr. Wy-

socki *also* told Mr. Kowalski that he represented CEMS. Kowalski Reply Aff. ¶ 5.

not represent the Members." Kowalski Reply Aff. ¶ 7 (emphasis added).

10. Finally, Mr. Kowalski explains that "by April 29, 2009, the dispute between the Members and [CEMS] was well under way." Nonetheless, he "understood that Mr, Wysocki owed [him] a duty of loyalty and good faith representation of [his] interests as . . . a Member of [CEJ]." Kowalski Reply Aff. ¶ 11.

## II. ANALYSIS

### A. Legal Standard

A motion to disqualify counsel may be a legitimate tool to protect the integrity of judicial proceedings. Because the "ability to deny one's opponent the services of capable counsel is a potent weapon," however, courts must be vigilant in reviewing disqualification motions. *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988). The court must balance the interest of the court and the public in upholding the integrity of the legal profession against the right of a party to retain counsel of its choice. *Id.* at 225. The movant bears the burden of proving that opposing counsel should be disqualified. *S.D. Warren Co. v. Duff—Norton,* 302 F.Supp.2d 762, 767 (W.D.Mich.2004). A decision to disqualify counsel must be based on a factual inquiry conducted in a manner allowing appellate review, but an evidentiary hearing is not necessarily required. *General Mill Supply Co. v. SCA Servs.,* 697 F.2d 704, 710 (6th Cir.1982).

### B. Disqualification is Not Warranted Based on a Present or Past "Attorney–Client" Relationship Between Plaintiff Members and Defense Counsel

The Sixth Circuit applies a three—part test for attorney disqualification: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990). At issue here are the first and third prongs of the *Dana* test. Regarding the first prong—the existence of a previous attorney-client relationship between Plaintiffs and counsel for Defendants—the relationship may be express or implied. *See Dalrymple v. Nat'l Bank & Trust Co. of Traverse City,* 615 F.Supp. 979, 985 (W.D.Mich.1985). Plaintiffs do not allege an express relationship. To determine if an implied relationship has been formed, "the focus is on the putative client's subjective belief that he is consulting a lawyer in his professional capacity, and on his intent to seek professional legal advice." *Id.* at 982. The court must determine whether the purported client "reasonably believes an attorney-client relationship has been created." *Id.* at 983.

As is evident from the *Dana* test, disqualification is not automatic where a prior attorney-client relationship is found. Instead, as the third prong of the *Dana* test demonstrates, courts are primarily concerned with "the possibility of the attorney's disloyalty and breach of faith towards one who had previously entrusted him with confidences." *Id.* As the court explained in *Dalrymple,* "[i]n the absence of a confidential relationship between counsel and the movant[ ], there can be no breach of faith requiring disqualification." *Id.* Thus, even if Plaintiff Members once held (or believed themselves to have held) an attorney-client relationship with Mr. Wysocki, the extreme sanction of disqualification **should be** employed only "when

there is a reasonable possibility that some **specifically identifiable impropriety** actually occurred." *Moses v. Sterling Commerce (America), Inc.*, 122 Fed.Appx. 177, 183–84 (6th Cir.2005) (citations omitted) (emphasis added).

Plaintiffs have provided two broad arguments in support of their Motion. First, Plaintiffs argue that, even if there is no specifically identifiable impropriety, disqualification is warranted if there is an "appearance of impropriety." Alternatively, Plaintiffs acknowledge that no express attorney-client relationship was created between KSWB and the Members, but they contend that an implied relationship was created because the Members reasonably believed they were individually represented by KSWB. I discuss each argument in turn.

### 1) The "Appearance of Impropriety" Standard is Inapplicable

Plaintiffs rely generally on *G.A.C. Commercial Corp. v. Mahoney Typographers, Inc.*, 66 Mich.App. 186, 238 N.W.2d 575, 577 (Mich.Ct.App.1976), for the proposition that disqualification is necessary—even where there is no alleged unethical conduct—if the attorney-client relationship creates the "appearance of impropriety." That case, however, is easily distinguished. First, the case applied the former Code of Professional Responsibility, which expressly prohibited the "appearance of impropriety." Canon 9. That ambiguous standard has long been abandoned. *See* A.B.A. Model Rules of Professional Conduct (pre–2002), Rule 1.9, Commentary at ¶ 5. Moreover, in G.A.C., the case had been in litigation for over two years. *Id.* at 576. While the litigation was ongoing, the attorney representing the defendant, who had taken "full responsibility for conducting the defense" throughout the matter, terminated his partnership with his law firm and became associated with the plaintiff's

law firm. *Id.* There were no specific allegations that the attorney had violated any ethical rules, nor that he had been connected to the litigation since associating with the plaintiff's counsel. *Id.* Nevertheless, the defendants moved to disqualify the law firm representing the plaintiff. Noting that the case was "a difficult one," the court disqualified the plaintiff's law firm in a "holding limited strictly to the facts of the instant case." *Id.* It reasoned that, in a law firm, partners often cooperate and share knowledge and exchange of ideas, during which the attorney may inadvertently disclose the defendant's confidences to the partners handling the plaintiff's case. Given the attorney's critical role in the litigation, and the consequent risks associated with the unique circumstances of that case, the court disqualified the plaintiff's law firm. *Id.* at 577.

In their Reply, Plaintiffs also cite *Smith v. Arc—Mation, Inc.*, 402 Mich. 115, 261 N.W.2d 713, 715 (1978) to support their "appearance of impropriety" argument:

As stated by the Michigan Supreme Court in 1978, and even truer today,

... [The] bottom line should always be this: where it is a question of ethics, the answer is 'no'. There is no room for 'close' questions of professional propriety, particularly at a time when public trust in and respect for the legal profession is not at its highest level.

Reply at 4. In a pattern that will become apparent, Plaintiffs' counsel again has not read the case it advances. While *Smith* does include that quote, it attributes it to the Court of Appeals, which cited *G.A.C.* for that proposition. The Michigan Supreme Court then reversed the lower court's disqualification of counsel, and rebuked the language quoted above:

**That constitutes, in our opinion, a dangerous doctrine.** It puts in the hands of an adversary the ability to

force an opponent to change counsel if the adversary can advance any arguable grounds in support of disqualification. *Id.* at 715–16 (emphasis added).

I agree with the Michigan Supreme Court in *Smith,* and decline to adopt the "appearance of impropriety" standard urged by Plaintiffs.

### 2) KWSB Represented CEJ, But Did Not Represent the Members

■ Defendants argue that, under the circumstances of this case, KSWB represented CEMS in its capacity as the sole Manager for CEJ, but did not represent the individual Members of CEJ. Although I find that KSWB represents, or at least represented, CEJ as a legal entity,[10] I agree that CEJ did not represent the Members individually.

■ In determining whether the Members established an independent attorney-client relationship with KSWB, analysis applied to attorney-client privilege claims by corporate employees is instructive. Generally, there is no individual attorney-client privilege between a corporation's attorney and an individual within the corporation unless there is a clear showing that he consulted the corporate counsel in his individual capacity. Five factors are considered in making this determination:

1. Whether the employee approached counsel for the purpose of seeking legal advice;

2. When he approached counsel, did he make it clear that he was seeking legal advice in his individual rather than representative capacity;

3. Counsel saw fit to communicate with him in his individual capacity, knowing that a possible conflict could arise;

4. His conversations with counsel were confidential; and

5. The substance of the conversations with counsel did not concern matters within the company or the general affairs of the company.

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d 120, 123 (3d Cir. 1986); *Ross v. City of Memphis,* 423 F.3d 596, 605 (6th Cir.2005) (recognizing that the *Bevill* test, which "has been adopted by many circuits," requires an individual to show that he "made it clear" that he was seeking individual advice). *See also Innes v. Howell Corp.,* 76 F.3d 702, 712 (6th Cir.1996) ("The law is generally settled that an attorney for a corporation does not automatically represent the corporation's constituents in their individual capacities, even on the same matters. **There must be clear consent.**") (emphasis **added**).

The purpose of requiring the employee to announce his desire for individual representation is to permit the lawyer to "gauge whether it would be appropriate to advise the individual given the attorney's obligations concerning representation of the corporation." *Id.* Plaintiffs are unable to satisfy any of the five prongs of *Bevill,* a fact I believe weighs heavily against any

---

**10.** By way of example, but without deciding the merits of any disputed factual issue, the following allegations support a finding that KSWB represents, or once represented, CEJ: (a) Mr. Kowalski claims that Mr. Nini and others told him that Mr. Wysocki was the "attorney for CEJ"; (b) March 4, 2009 CEMS Board Meeting Minutes list Mr. Wysocki as "attorney for Corporate Eagle Jet, LLC"; (c) April 29, 2009 CEMS Board Meeting Minutes clarifies that Mr. Wysocki is CEJ's attorney; (d) the Subscription Agreement advises that KSWB may represent the collective Management, defined to include CEJ, in Fund Legal Matters; (e) Exhibit C to the Subscription Agreement indicates that CEMS and CEJ are represented by the same legal counsel (KSWB); and (f) the Operating Agreement states that KSWB represents CEJ.

claim of an attorney-client relationship between Plaintiffs and KSWB. In brief summary, (1) Plaintiffs never approached Mr. Wysocki, or any other KSWB attorney, *seeking legal advice*; (2) Plaintiffs never informed any KSWB attorney that they sought advice in their individual capacities; (3) to the extent KSWB "knew" a conflict could arise, they sought and obtained waivers to acknowledge their corporate representation of CEJ and CEMS and disavow any individual representation of the Members; (4) no Plaintiff alleges any "confidential" conversations with any KSWB attorney—in fact, all communications were in group settings, in which the Defendants participated; and (5) the substance of all alleged interactions between KSWB and Plaintiffs concerned governance and/or management of CEJ. In light of these factors, Plaintiffs fight an uphill battle to establish any present or past attorney-client relationship with KSWB.

Further, MRPC 1.13, the Rule dealing with representation of an organization as a client, states "[a] lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents." Thus, even if KSWB represents (or represented) CEJ, that role does not include representation of the Members.[11]

Plaintiffs argue that KSWB's representation of CEJ did not "preclude" its concurrent representation of Plaintiffs as Members of CEJ. Reply at 2. In support, Plaintiffs cite MRPC 1.13(e), which states, in relevant part: "A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, **subject to the provisions of Rule 1.7.**" (emphasis added). Rule 1.7 allows dual representation of clients in some circumstances, if each client "consents after consultation." This requirement, which is consistent with the *Bevill* requirement that representation of the Members can occur only after informed consent, further evidences that both the attorney and the client must appreciate the potential for conflicts arising out of joint representation. Importantly, Plaintiffs have not identified any "consultation" or "consent" with respect to this dual representation, as required by Rule 1.7. Instead, they simply allege (without argument or support) that some of the Members "reasonably believed" they were represented by KSWB. I find there was no express consent, as contemplated by Rules 1.13 and 1.7. To evaluate whether Plaintiffs gave their "implied" consent for KSWB to represent CEMS, CEJ, *and* the Members, I must address Plaintiffs' "reasonable belief" argument.

Plaintiffs have not established that any Plaintiff *reasonably* believed that Mr. Wysocki represented him as a Member, as opposed to representing CEJ and/or CEMS.[12] Plaintiffs' Motion does not allege

---

11. CEJ is not a party to this action, and no conflict exists between CEJ and Defendants warranting disqualification. **accrue to them as partners, and not in their individual capacities, no attorney-client relationship should be implied.**

12. Although Plaintiffs extensively rely upon *Rosman v. Shapiro*, 653 F.Supp. 1441, 1445 (S.D.N.Y.1987) to support their argument, their reliance is misplaced. The Second Circuit has expressly rejected the "reasonable belief" test. *MacKenzie–Childs LLC v. MacKenzie–Childs*, 262 F.R.D. 241, 253–54 (W.D.N.Y.2009) citing *U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 119 F.3d 210 at 215 (2d Cir.1997) (declining to adopt a 'reasonable belief standard'). Moreover, *Rosman* itself does not support Plaintiffs' position. The court declined to disqualify counsel based upon Canon 4 of the former ethical rules, under which disqualification was warranted

that any Plaintiff privately consulted with or sought guidance or legal counsel from any KSWB attorney, nor does the Motion claim that any Plaintiff entrusted a KSWB attorney with confidences that must now be protected. In fact, as Defendants point out, Plaintiffs have not identified a single privileged communication between any Plaintiff and any KSWB attorney. Instead, Plaintiffs vaguely claim that they "relied upon" Mr. Wysocki "and his firm's legal representation." Yet, in identifying the interactions from which they ask this Court to impute the formation of an attorney-client relationship, Plaintiffs identify only a single conference call, one letter, and one or two

CEMS Board meetings each of which included Defendants as participants. Moreover, one Plaintiff admits that Mr. Wysocki was not acting impartially in the conference call; he was "unreasonably" representing CEMS's position without regard to the Plaintiffs' wishes. The letter also offers no legal advice, but informs the Plaintiffs of CEMS's planned course of action in managing CEJ. And finally, the Board meetings were for CEMS—it is hard to imagine how any CEJ Member could believe he was receiving individualized legal advice during a governance meeting for a separate legal entity. In these circumstances, no Plaintiff reasonably could have formed the requisite "sub-

when an attorney "was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Id.* at 1446. Rosman had argued that counsel had previously jointly represented both parties, and thus it could not represent Shapiro in the instant action. The court found that "[g]iven the prior joint representation, [counsel] **simply could not have possessed any information which Rosman intended to be held in 'confidence' or as a 'secret' from Shapiro.**" (emphasis added). Thus, the court refused to disqualify counsel based on the "reasoning" Plaintiffs cite to this Court. The court ultimately disqualified counsel based on former Canon 9, which permitted disqualification to avoid the appearance of impropriety. But, as discussed above, that ambiguous standard has been abandoned in the current ethical rules.

Plaintiffs also claim that *Margulies v. Upchurch*, 696 P.2d 1195, 1200–01 (Utah 1985) "stands for the proposition that a law firm's representation of a limited partnership gives rise to an implied attorney-client relationship . . . with respect to the individual partners who reasonably believed the law firm was acting for their individual interests as well as those of the partnership, supporting disqualification here." Reply at 3 n. 3. Once again, Plaintiffs have failed to appreciate the holding of this case. In *Margulies*, the disqualified counsel represented a limited partnership, the individual members of which could have been

held personally liable on certain letters of credit if counsel was unsuccessful in its representation of the partnership. In those circumstances, the court found it was reasonable for the individuals to believe that counsel was representing their interests. It explained,

**It should be noted that we do not find that an attorney automatically becomes counsel for limited partners when he or she undertakes representation of a limited partnership. . . .** A limited partnership is an entity equivalent to a corporation for litigation purposes, . . . and therefore representation of a limited partnership does not of itself require allegiance to the interests of the limited partners. **If the limited partners stand to gain nothing more from the attorney's representation of the limited partnership than the incidental gain which will accrue to them as partners, and not in their individual capacities, no attorney-client relationship should be implied.**

*Margulies*, 696 P.2d at 1200–01 (emphasis added). In this case, Plaintiffs have provided no evidence that they stood to gain from KSWB's representation of CEMS or CEJ, aside from "the incidental gain" accruing to them as Members. Again, counsel for Plaintiffs has misrepresented the import of legal precedent in an impotent attempt to bolster its argument. A full reading of the case demonstrates that, in the circumstances of *this case*, *Margulies* supports a finding that KSWB represented CEJ—not the Members—the Members' contrary "belief" notwithstanding.

jective belief that he [was] consulting a lawyer in his professional capacity, [with an] intent to seek professional legal advice." *See Dalrymple,* 615 F.Supp. at 981.

Further undermining Plaintiffs' "belief" that KSWB represented their individual interests, Plaintiffs expressly acknowledged that KSWB represented only CEJ and CEMS as the Manager of CEJ. Both the Subscription Agreement and the Operating Agreement—which Plaintiffs seek to rely upon in support of their Complaint—unequivocally state that KSWB does not, and will not, represent the individual Members. Thus, regardless of the legal effect of the waiver of conflicts, which will be discussed below, Plaintiffs' purported "belief" that they were individually represented by KSWB is seriously belied by the documents they signed.

As the fatal blow to Plaintiffs' "reasonable belief" argument, I note two undisputed facts that appear irreconcilable with Plaintiffs' contention that they believed they were represented by KSWB. First, at least two of the individual Plaintiffs maintained separate counsel as of the time they were contemplating investing in CEJ. And, the February 10, 2009 letter from Plaintiffs' representatives to Defendants was sent by Plaintiffs' current counsel. Plaintiffs contend that their "engagement of Miller Canfield in the midst of this dispute is irrelevant to this Motion." Reply at 3 n, 2. I disagree. The fact that Plaintiffs had engaged their own counsel *before* most of the interactions that they suggest evidenced an attorney-client relationship severely undermines their argument in this Motion. *See Dalrymple,* 615 F.Supp. at 987 (finding the movant already had its own general corporate counsel, "a fact which tends to belie [movant's] assertions that they believed [counsel] jointly represented [both parties]"). After all, Plaintiffs cannot reasonably argue that they

were "relying" on Mr. Wysocki to protect their interests as Members, when they had already hired someone else to do so. Because Plaintiffs have failed to present *any evidence* of a "confidential relationship" or demonstrate a reasonable risk of any "specifically identifiable impropriety," "there can be no breach of faith requiring disqualification." *Dalrymple,* 615 F.Supp. at 983; *Moses,* 122 Fed.Appx. at 183–84.

## C. Plaintiffs Consented to KSWB's Representation of Defendants In Fund Legal Matters

 Plaintiffs argue that their consent to KSWB's representation of Defendants is not binding because KSWB inadequately disclosed the "nature and implications of the legal conflict of interest in the detail required to provide a knowing waiver." Reply at 2. Because I find that KSWB did not represent the individual Members, the Members did not need to give their consent for KSWB to represent the Defendants in this action. Nevertheless, I analyze the validity of the consent as an alternate ground for denying Plaintiffs' Motion.

 A client may consent to a conflict if the consent is informed. *CenTra, Inc. v. Estrin,* 538 F.3d 402 (6th Cir.2008). The amount of disclosure required, however, depends on the circumstances. The Sixth Circuit has recognized that it is "not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both of them, but he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to have independent counsel." *Id.* at 415–16 (quoting *Unified Sewerage Agency v. Jelco Inc.,* 646 F.2d 1339, 1345–46 (9th Cir.1981)). While the exact requirements for "informed consent" are undefined, "[i]t is doubtful that passing con-

versations at cocktail parties and in the hallways" satisfies the requirement. *Id.* at 416 (quoting *Ransburg Corp. v. Champion Spark Plug Co.*, 648 F.Supp. 1040, 1046 (N.D.Ill.1986)).

 Where counsel seeks to obtain a *prospective waiver*, as in the Subscriber Agreement, the informed—consent disclosures may differ from those in a contemporaneous waiver. ABA Committee on Ethics and Professional Responsibility Formal Op. 93–372 (affirming the validity of prospective waivers). To be effective, a prospective waiver should identify the potential opposing party and the nature of the likely subject matter in dispute, and permit the client to appreciate the potential effect of the waiver:

> The closer the lawyer who seeks a prospective waiver can get to circumstances where not only the actual adverse client but also the actual potential future dispute are identified, the more likely it will be that a prospective waiver is consistent with the requirement[s] of [Rule 1.7].

*Id.* at 4. The requirements for full disclosure "turn on the sophistication of the client, whether the lawyer is dealing with inside counsel, the client's familiarity with the potential conflict, the longevity of the relationship between client and lawyer, the legal issues involved and the ability of the lawyer to anticipate the road that lies ahead if the conflict is waived." *Id.* at 3.

The Subscription Agreement states: (1) KSWB represents CEJ and CEMS in connection with the investment offering; (2) KSWB does not and will not represent any Member in connection with the formation of CEJ; (3) KSWB does not and will not represent any Member in connection with any Fund Legal Matters—including any dispute between a Member and the Management (collectively defined to include Mr. Nini, CEMS, and CEJ, and their affili-

ates); (4) the Member will need to obtain separate counsel with regard to any Fund Legal Matters; and (5) the Member consents to KSWB representing the "Management in connection with any and all Fund Legal Matters (including any dispute between the Management and the Subscriber or any other member of the LLC) and waives any present or future conflict of interest with Legal Counsel regarding Fund Legal Matters." In addition, Exhibit C lists the joint representation of CEJ and CEMS as a Risk Factor, cautioning that "the Subscriber should retain its own independent counsel." Plaintiffs do not argue what information should have been disclosed—only that this disclosure is insufficient to notify a reasonable person why he may want to withhold consent. Again, I disagree.

The Subscription Agreement discloses all information that was reasonably known at the time. KSWB does and will represent CEJ and CEMS, and will not represent the Subscriber. If any disputes arise between any Member and Management, KSWB will represent Management. This disclosure complies with the teachings of ABA Formal Op. 93–372. It lists the potential adverse party (Management), and, to the extent known at the time, the potential subject matter (disputes between Members and Management) and the potential adverse consequences (Members will need to obtain separate counsel in any dispute with Management). The disclosure was not a "passing conversation" that the Court should discount; it was a detailed notice to Plaintiffs that KSWB's allegiance lies with the Management, not the individual Members.

Nor is the instant matter similar to any case Plaintiffs cite to suggest that "mere notification of dual representation is insufficient." For example, In *El Camino Resources,* counsel was actively representing

a party in one litigation, while representing the opposing party in other matters. *El Camino Resources, Ltd. v. Huntington National Bank*, 623 F.Supp.2d 863 (W.D.Mich.2007). Counsel obtained a limited disclosure waiving conflicts for two named matters, which did not include the matter before the court. *Id.* at 879–883. Moreover, the client had rejected a general waiver and negotiated a consent that unequivocally stated that it would not be deemed a consent to other adverse matters. *Id.* Accordingly, the court properly found that counsel had not obtained an effective waiver to the specific, known, conflict before the court. *Id.* The second case, *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 480 (W.D.Mich.1997), is a complicated matter involving a group of directors and officers attempting to assert attorney-client privilege to withhold information from the company to whom they owed fiduciary duties. The management group retained the same legal counsel that represented their company and its parent entity. The court found there was "no written disclosure by the fiduciaries, nor written waiver of conflict of interest by [the parent corporation]" that would permit a court to find a knowing waiver of conflict to allow counsel to simultaneously represent the management, the company for whom they were fiduciaries, and the parent company. *Id.*

Obviously, both of the cited cases involved a substantial conflict, wherein the counsel to be disqualified had obtained confidences from the client seeking disqualification. In this case, however, Plaintiffs have demonstrated neither the existence of an attorney-client relationship, nor the sharing of confidences with KSWB that must be protected by the extreme measure of disqualification.

Finally, I find the ABA factors militate against disqualification. Plaintiffs are so-phisticated business persons; in fact, they acknowledged their status as Accredited Investors. And with any substantial investment in an LLC, there is potential for conflict between the Management and the shareholders. Thus, the potential conflict could certainly have been appreciated by Plaintiffs. There simply is no "longevity" of the relationship between the Members and KSWB. Even resolving all factual disputes in Plaintiffs' favor, Plaintiffs admit they had absolutely no contact with KSWB before the consent was signed, and just three to four interactions, in group settings, in the months leading to this lawsuit. Finally, the legal issues involved also favor Defendants. This case is about an allegedly—fraudulent securities offering, the material facts about which occurred *before* Plaintiffs had any contact with KSWB. Plaintiffs had no reasonable expectation that they could rely on KSWB with regard to that offering, as the documents explicitly counsel the Members to obtain separate counsel (and, in fact, at least some Plaintiffs did just that).

In these circumstances, I find that even if some Plaintiffs "reasonably believed" that KSWB represented them, they explicitly consented to KSWB's representation of Management in Fund Legal Matters. Because this case is a Fund Legal Matter, as defined in the Subscription Agreement, Plaintiffs have waived any conflict which may have existed.

### D. Because Mr. Wysocki Did Not Act as an Intermediary, Disqualification is Not Required by Rule 2.2

Plaintiffs next argue that Mr. Wysocki acted as an intermediary between the parties, and must therefore be disqualified from representing either party in this action. As Plaintiffs note, to serve as an intermediary: (1) the lawyer must consult with each client regarding risks and obtain

each client's consent; (2) the lawyer must reasonably believe that the matter can be resolved in all of the clients' best interests and without prejudice to any of them if the resolution is unsuccessful; and (3) the lawyer must reasonably believe that it will not have an improper effect on any other responsibilities the lawyer has to any of the clients. MRPC 2.2(a)(1–3). Plaintiffs ignore the first requirement—they do not allege that Mr. Wysocki consulted with each of them or obtained their consent to serve as intermediary. Instead, they say only that, "[w]hen the parties first had some differences of opinion", he "tried to bring them together and advise them." In this capacity, they suggest, he attended CEMS's board meetings "in his role as counsel to CEJ" during which he "advis[ed] the individual Members ... about possible resolutions." Plaintiffs claim that through his actions Mr. Wysocki "in effect, negotiated on behalf of all the interested parties."

I find that Mr. Wysocki's participation at CEMS's board meeting(s) is entirely consistent with his role as counsel for CEJ, and CEMS as sole Manager of CEJ. As is the letter he sent to the Members on January 22, 2009, which repeatedly describes decisions, actions, and plans of "the Manager [CEMS]." It does not offer to negotiate the Manager's plans, instead inviting the Members only to contact Mr. Wysocki or Mr. Nini "with any questions/comments." Plaintiffs also admit that Mr. Wysocki acted as though he was "clearly representing" CEMS, he "dictated ultimatums" and "unreasonably refused" to listen to the position of the Members. Mr. Wysocki's alleged behavior is wholly inconsistent with Plaintiffs' allegations that they reasonably believed he was acting as an intermediary. Plaintiffs also have not alleged that the Members were individually responsible for any of Mr. Wysocki's legal fees for his purported role as an

"intermediary" between the Members (not CEJ) and Defendants. While the payment of legal fees is not dispositive, I find this supports Defendants' contention that Mr. Wysocki was acting in his role as counsel for CEJ (who Plaintiffs acknowledge paid at least some legal fees), or CEMS as Manager of CEJ. I find no merit to Plaintiffs' argument that Mr. Wysocki served as intermediary among the parties. Accordingly, I decline to disqualify Mr. Wysocki or KSWB on this basis.

### E. Disqualification Under MRPC 3.7 is Premature, at Best

Plaintiffs also argue that disqualification is mandated by MRPC 3.7. Rule 3.7(a) generally prohibits a lawyer from acting as an advocate *at a trial* in which he is likely to be a necessary witness. But Rule 3.7(b) *permits* an attorney to act as an advocate *at trial* where a fellow partner is likely to be a witness, except where precluded from doing so by Rules 1.7 or 1.9. Plaintiffs contend that Mr. Wysocki is likely a necessary witness, a fact which Defendants appear to concede. Plaintiffs further claim that the entire firm must be disqualified on the basis of Mr. Wysocki's status as a key witness. As explained in *Dalrymple,* "[a]lthough [Mr. Wysocki] may well be disqualified from acting as trial counsel, the rule does not require his complete disqualification at this point." 615 F.Supp. at 990. Having found that Rules 1.7 and 1.9 do not mandate disqualification, I hold that another KSWB lawyer may serve as trial counsel—in the event trial becomes necessary.

### F. Plaintiffs' Breach of Fiduciary Duty and Duty of Loyalty Argument Will Not Be Considered

Plaintiffs allege in their Reply, for the first time, that because three principals of Plaintiff Members were given seats

on CEMS's Board of Directors, they "became members of the corporate control group of [CEMS], represented by Mr. Wysocki and KSWB." Reply at 3. In a footnote, they further assert that "those Members of [CEJ] who were on the Board of Directors of [CEMS] certainly were included in the attorney client relationship between Mr. Wysocki, his firm and [CEMS], providing grounds for disqualification here." Reply at 4 n. 4. Because this argument—imputing an attorney-client relationship between three Members and Mr. Wysocki by virtue of their principals' positions on the CEMS Board was raised for the first time in Plaintiffs' Reply, I will not now consider it. *Sundberg v. Keller Ladder*, 189 F.Supp.2d 671, 683 (E.D.Mich. 2002) ("is not the office of a reply brief to raise issues for the first time") (citing *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir.1993)).

Furthermore, Plaintiffs suggest that "Disqualification May be Based on Breach of Fiduciary Duty and Duty of Loyalty." Reply at 4. I say "suggest" because they have neither argued this in their Motion, nor in their Reply. In fact, this "suggestion" is afforded no analysis whatsoever, but only two quotes, from two different cases, neither of which is analogous to this case.[13] I have already discussed the inapplicability of *Margulies* to these facts. Plaintiffs' reliance on *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371 (S.D.Tex.1969) is similarly misplaced. In *E.F. Hutton*, the court disqualified attorneys representing Hutton in an action against Brown, Hutton's former vice president. The court found that Hutton's attorney had entered a formal appearance at two separate hearings on behalf of Brown (when he still worked for Hutton), sufficing to establish an independent attorney-client relationship between Brown and the attorney. Hutton argued that disqualification was inappropriate because Brown had never shared confidential material with the attorney. The court found the lack of a confidential exchange nondispositive under the applicable criteria for disqualification. *Id.* at 394. Notably, those criteria differ from the *Dana* factors described above in that they do not include the third factor—the attorney acquired confidential information from the party seeking disqualification. *Compare Id.; Dana*, 900 F.2d at 889. Because the exchange of confidential information *is* an element of disqualification analysis in the Sixth Circuit, and none has been alleged, the *E.F. Hutton* analysis is inapposite to the instant case.

Regardless, because Plaintiffs failed to raise or develop this argument in their Motion, I will waste no more time on whether KSWB owed to Plaintiffs any alleged "fiduciary duties" that would warrant counsel's disqualification. *Sundberg*, 189 F.Supp.2d at 683.

## III. CONCLUSION

I find that Plaintiffs have advanced insufficient facts from which they could have formed a "reasonable belief" that KSWB represented their individual interests. As such, KSWB represented CEMS, and CEJ, but had no explicit or implied attorney-client relationship with Plaintiffs. Moreover, even if an implied relationship had been created, Plaintiffs imparted no confidences to KSWB. There being no confidential relationship, there can be no breach of faith requiring disqualification under Rules 1.7 or 1.9. I also find that Mr. Wysocki need not be disqualified under Rule 2.2, as he did not act as an

13. Plaintiffs also suggest in a footnote that "breach of fiduciary duty by counsel was claimed" in this case. There are no claims pending against KSWB under a breach of fiduciary duty theory, or any other.

intermediary between the individual Members and the Defendants. Finally, Mr. Wysocki may be a necessary witness, subject to disqualification *at trial.* Any disqualification under Rule 3.7, however, is premature. Accordingly, Plaintiffs' Motion to Disqualify Defendants' Counsel is DENIED. Having denied Plaintiffs' Motion to Disqualify, and having refused to consider new arguments made by Plaintiffs' for the first time in their Reply, I also DENY Defendants' Motion to Strike Plaintiffs' Reply as moot.

I feel the need to add one more note. It appears to me that this Motion was wholly without merit, and unsupported by the very cases advanced by Plaintiffs. In fact, if my count is correct, at least seven of the cases cited by Plaintiffs fail to support the proposition for which they are included. In fact, there are other examples, but I have already devoted far too much time detailing Plaintiffs' misapplied and misconstrued citations. While the literal quotation referenced by Plaintiffs may exist, the cases do not "stand for" or "support" Plaintiffs' position. In the interests of judicial economy and fairness to Defendants, I have chosen to complete the analysis of this Motion. Suffice it to say, however, if Plaintiffs submit another brief of equally poor quality, I will strike it and consider imposing sanctions.

**IT IS SO ORDERED.**