*1202 OPINION
By the Court,
Rose, C. J.:
This writ petition presents us with the question whether a party’s counsel of choice should be disqualified based on his close association with a law firm disqualified under SCR 160 for an imputed conflict of interest.[1] We conclude that disqualification is not warranted absent proof of a reasonable probability that counsel actually acquired privileged,. confidential information, and we therefore grant the petition.
Petitioner Florence Brown sustained life-threatening injuries in an automobile accident in August 1992. She was hospitalized and underwent surgery by real party in interest, Dr. John Thalgott, and Dr. Jeffrey Zapinsky.[2] In late 1993 or early 1994, Mr. and Mrs. Brown hired attorney Thomas C. Mehesan to represent them.
Mehesan negotiated a settlement of the automobile accident case; however, he felt compelled to withdraw from representation of the Browns when they and medical care lien holders both claimed the settlement proceeds that had been deposited in Mehesan’s trust account. Mehesan referred the Browns to the law firm of Barker, Gillock, Koning & Brown (later Gillock, Koning, Markley & Killebrew; now Gillock, Markley & Killebrew), which agreed to represent the Browns in a medical malpractice action.
The Gillock firm commenced proceedings before the Medical-Legal Screening Panel (now the Medical-Dental Screening Panel) against Dr. Thalgott. Dr. Thalgott was represented by attorney Neil G. Galatz, who had previously represented the doctor in other matters. Galatz was assisted in his representation of Dr. Thalgott by his paralegal and personal secretary, Lucrezia Smith, who had worked for Galatz since July 1987. The screening panel issued a finding of no reasonable probability of medical malpractice by Dr. Thalgott in February 1996, and the Gillock firm filed a medical malpractice complaint on behalf of the Browns in March 1996.
In September 1996 Smith left the Galatz law firm to work for the law firm of Broening, Oberg, Woods, Wilson & Cass; Smith then left that firm in March 1997 to work for the law firm of Kummer, Kampfer, Bonner & Renshaw. Meanwhile, in February *1203 1997, James F. Pico of the Pico & Mitchell law firm was substituted as Dr. Thalgott’s attorney in place of Galatz.
Mehesan resolved his potential conflict of interest with the Browns, and in April 1997 the Browns formally associated Mehesan with the Gillock firm as their co-counsel. Firm partner Gerald Gillock was designated lead counsel for trial; however, Mehesan was extensively involved in preparing for trial, and attended or took all major depositions in the case.
In October 1997 this court issued its opinion in Ciaffone v. District Court, 113 Nev. 1165, 945 P.2d 950 (1997), which rejected a challenge by the Gillock firm to its disqualification in an unrelated wrongful death action based on its employment of a legal secretary who had previously worked on the wrongful death case for opposing counsel.
In May 1998 Gillock hired Smith as his personal secretary. Gillock screened Smith from the Brown case, but did not notify Dr. Thalgott or obtain a waiver from him.
Also in May 1998, the district court scheduled a jury trial to begin in the underlying case on March 9, 1999. In February 1999 Dr. Thalgott moved to continue the trial. The district court denied the motion, but subsequently reset the trial for May 12, 1999, to accommodate the court’s schedule.
On May 7, 1999, Dr. Thalgott filed a “Motion to Disqualify Plaintiffs’ Attorneys,” based on Ciaffone and Smith’s employment with the Gillock firm. In his supporting affidavit, Dr. Thalgott swore he first became aware that Smith had become Gillock’s personal secretary on May 5, 1999, while preparing for trial. In their opposition, petitioners conceded Ciaffone applied, but argued that disqualification was not warranted because Dr. Thalgott’s attorney knew that Smith had formerly worked for Galatz, and had known for at least two or three months that Smith was now working for Gillock.
Dr. Thalgott’s attorney acknowledged these facts at the May 10, 1999, hearing on the motion, but argued his knowledge was irrelevant under the circumstances: he had not known the extent of Smith’s involvement in Dr. Thalgott’s cases, and Dr. Thalgott had not known that Smith had changed sides.
Gillock then offered to withdraw himself and his firm from representation of the Browns, so that the case could proceed to trial as scheduled with Mehesan taking over as trial counsel. Gillock and Mehesan both indicated that Mehesan was ready to try the case. Dr. Thalgott’s attorney argued Mehesan should be disqualified as well because of his close association with Gillock. Notwithstanding repeated assertions by Gillock and Mehesan that no confidential information had actually passed from Smith to either of them, or from Gillock to Mehesan, the court granted the *1204 motion and disqualified both the Gillock firm and co-counsel Mehesan.
Petitioners specially retained the law firm of Lionel, Sawyer & Collins and moved for reconsideration. The parties fully briefed and argued the issue whether Mehesan was subject to imputed disqualification under SCR 160, given the fact that he was not a member of the disqualified firm.
In its order denying reconsideration, the district court clarified that it did not believe that Ciaffone mandated automatic disqualification of co-counsel based on a double imputation of confidential knowledge. The court declined to specify any particular test that should be applied in the co-counsel situation generally, and focused instead on the specific facts before it. Accepting the truthfulness of the affidavits indicating there was no actual transfer of privileged information, the court nevertheless decided the close working relationship between Gillock and Mehesan required Mehesan’s disqualification to avoid any appearance of impropriety. This writ petition followed.
It is not disputed that Smith acquired privileged, confidential information from and relating to Dr. Thalgott when she worked for Galatz. Smith’s conflict of interest was imputed to the Gillock firm, which was disqualified under SCR 160(2) and Ciaffone.
SCR 160(2) prohibits lawyer screening and imputes a lawyer’s disqualification to the lawyer’s firm.[3] In Ciaffone, this court held that nonlawyer employees are subject to the same rules governing imputed disqualification because to hold otherwise would grant less protection to privileged, confidential information acquired by a lawyer’s employees than to that acquired by the lawyer. Ciaffone, 113 Nev. at 1168, 945 P.2d at 953.
The district court properly declined to interpret Ciaffone as mandating automatic disqualification of co-counsel based on a double imputation of Smith’s knowledge. The question is whether Ciaffone’s rationale supports the imputed disqualification of co-counsel Mehesan for an appearance of impropriety without evidence of a reasonable probability that there was a transfer of privileged, confidential information.[4] We conclude it does not.
*1205 District courts are responsible for controlling the conduct of attorneys practicing before them, and have broad discretion in determining whether disqualification is required in a particular case. See Robbins v. Gillock, 109 Nev. 1015, 1018, 862 P.2d 1195, 1197 (1993); Cronin v. District Court, 105 Nev. 635, 640, 781 P.2d 1150, 1153 (1989). Courts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one’s choice, each party’s right to be free from the risk of even inadvertent disclosure of confidential information, and the public’s interest in the scrupulous administration of justice. See Hull v. Celanese Corp., 513 F.2d 568, 570 (2d Cir. 1975). While doubts should generally be resolved in favor of disqualification, see Cronin at 640, 781 P.2d at 1153; Hull, 513 F.2d at 571, parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay. See Flo-Con Systems, Inc. v. Servsteel, Inc., 759 F. Supp. 456, 458 (N.D. Ind. 1990).
When considering whether to disqualify counsel, the district court must balance the prejudices that will inure to the parties as a result of its decision. Cronin, 105 Nev. at 640, 781 P.2d at 1153. To prevail on a motion to disqualify opposing counsel, the moving party must first establish “at least a reasonable possibility that some specifically identifiable impropriety did in fact occur,” and then must also establish that “the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer’s continued participation in a particular case.” Id. at 641, 781 P.2d at 1153 (quoting Shelton v. Hess, 599 F. Supp. 905, 909 (S.D. Tex. 1984)).
Here, Smith’s employment at the Gillock firm and Mehesan’s close working association with Gillock constituted evidence of a reasonable possibility that Gillock acquired confidential information from Smith and shared it with Mehesan. However, as required by Cronin, the Browns must also establish a “likelihood of public suspicion or obloquy,” which is to then be weighed against the social interests served by Mehesan’s continued partic *1206 ipation. This likelihood can be established by evidence showing not just the possibility, but a reasonable probability, that the challenged attorney actually received privileged or confidential information. Having reviewed the evidence presented to the district court, we conclude that the equities do not favor severing the attorney-client relationship between Mehesan and the Browns.
First, Smith, Gillock and Mehesan submitted affidavits rebutting the evidence that Mehesan could have acquired privileged, confidential information about Dr. Thalgott, and the district court accepted the truthfulness of these affidavits. Thus, there was no evidence that Mehesan actually or even probably acquired disqualifying information.
Second, absent proof of at least a reasonable probability that Mehesan actually acquired privileged, confidential information, Dr. Thalgott failed to establish that he would be prejudiced by Mehesan’s continued participation. In contrast, petitioners would be severely prejudiced by the disqualification of their counsel of choice, as it would be very difficult for new counsel to economically and timely move the case to trial.
We are mindful of the quandary the district court faced in this case: allowing disqualification of co-counsel without requiring proof that confidences were shared tends toward automatic disqualification, based on re-imputation of an imputed conflict, while requiring such proof introduces all the problems associated with screening that are identified in Ciaffone (difficulty litigating the issue, uncertainty about the effectiveness of screening, the monetary incentive involved in breaching the screen, the fear of disclosing privileged information in the course of proving an effective screen, and the possibility of accidental disclosures). We conclude that requiring proof of a reasonable probability that counsel actually acquired privileged, confidential information strikes the appropriate balance in disqualification cases such as this.
In light of the fact that there was no reasonable probability that Mehesan acquired confidential information, and the fact that Dr. Thalgott would not be prejudiced by Mehesan’s continued representation of the Browns while the Browns would be greatly prejudiced by his removal, Mehesan’s disqualification was not warranted under Cronin. Consequently, we conclude the district court manifestly abused its discretion by disqualifying Mehesan as counsel for petitioners under these circumstances.
A writ of mandamus is properly used to challenge a district court’s order disqualifying counsel. See Cronin, 105 Nev. at 639 n.4, 781 P.2d at 1152 n.4. Based on our conclusion that the district court manifestly abused its discretion by disqualifying *1207 Mehesan as petitioners’ counsel, we grant this petition.[5] See Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). The clerk of this court shall issue a writ of mandamus compelling the district court to vacate its order disqualifying Mehesan as counsel for petitioners.[6]
Maupin, J., and Adams, D. J., concur.

 On December 20, 1999, the Southern Nevada Panel denied the petition by a split decision. On January 27, 2000, the panel referred the matter for reconsideration by the full court and vacated its order denying the petition.

 Although Dr. Zapinsky is still a party in the underlying action, he is not a party to this proceeding.

 SCR 160(2) provides:
When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 156 and 159(2) that is material to the matter.

 Relying on Collier v. Legakes, 98 Nev. 307, 646 P.2d 1219 (1982), and the fact that Nevada has not adopted Canon 9 of the 1969 Model Code of Professional Responsibility, which states that “a lawyer should avoid even the appearance of professional impropriety,” petitioners assert that disqualifica *1205 tion cannot be based on an appearance of impropriety. Collier, which addresses individual and vicarious disqualification of prosecutors in criminal cases, does not support petitioners’ argument. To the contrary, Collier recognizes that disqualification may be warranted if an appearance of unfairness or impropriety is great enough to undermine public trust and confidence in the judicial system. See id. at 310, 646 P.2d at 1221. That is not the case here.

 In addition, we vacate our previous order staying all proceedings in the underlying district court case, No. A357067.

 The Honorable Brent T. Adams, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of The Honorable Cliff Young, Justice, who voluntarily recused himself from participation in the decision of this matter. Nev. Const. art. 6, § 4.