THEODORE L. LIAPIS, Petitioner, v. THE SECOND JUDI-
CIAL DISTRICT COURT OF THE STATE OF NEVADA, in
and for THE COUNTY OF WASHOE; and THE HON-
ORABLE EGAN K. WALKER, District Judge, Respon-
dents, and MARIE JOSEPHINE LIAPIS, Real Party in
Interest.

No. 58649

August 9, 2012                                    282 P.3d 733

*Mark T. Liapis*, Reno, for Petitioner.

*Jonathan H. King*, Reno, for Real Party in Interest.

Before CHERRY, C.J., PICKERING and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

This original petition for a writ of mandamus raises two novel issues regarding attorney disqualification: should an attorney who represents one of his parents in a divorce action between both parents be disqualified either (1) because the attorney's representation will constitute an appearance of impropriety or (2) because representing the parent will violate the concurrent-conflict-of-interest rule in Nevada Rule of Professional Conduct (RPC) 1.7? Because appearance of impropriety is no longer recognized by the American Bar Association, and we have not recognized the appearance of impropriety as a basis for disqualifying counsel except in the limited circumstance of a public lawyer, we reject that conclusion when the alleged impropriety is based solely on a familial relationship with the attorney. We also conclude that absent an ethical breach by the attorney that affects the fairness of the entire litigation or a proven confidential relationship between the nonclient parent and the attorney, the nonclient parent lacks standing to seek disqualification under RPC 1.7.

### FACTS AND PROCEDURAL HISTORY

Real party in interest Marie Liapis filed a complaint for divorce against petitioner Theodore Liapis, in which she also sought disposition of the couple's property, permanent spousal support, and her attorney fees and costs. Theodore answered Marie's complaint in proper person but later retained Mark Liapis, the couple's son, as his attorney.

A settlement conference was scheduled, and each party filed a statement in preparation for that conference. In her statement, Marie objected to Mark's representation of Theodore. Because of the issues raised concerning Mark's representation of Theodore, the district court vacated the scheduled settlement conference and gave Mark time to determine whether he would continue as Theodore's counsel.

Mark informed Marie's counsel that he did not intend to withdraw as counsel for Theodore. Marie subsequently filed a motion to disqualify Mark, asserting three bases for his disqualification. First, she argued that Mark's representation of Theodore and his pecuniary interest in their estate created an appearance of impropriety. Second, she argued that even though Mark had never represented her, there was an "inherent conflict of interest" because it was unclear "how [Mark] would be able to zealously represent [Theodore]" when he "professe[d] to still love both his parents." Finally, she contended that Mark should be disqualified because he was a potential witness in the case.

In response, Theodore argued that Marie's "boilerplate generalities" were insufficient to mandate Mark's disqualification, and that Mark had no pecuniary interest in the couple's estate. Further, Theodore argued that there was no concurrent conflict of interest under RPC 1.7 because Mark had never represented Marie and, even if Theodore could raise a conflict, he waived it through a written informed consent. Finally, he argued that Mark could not be disqualified as a potential witness because the case was still in the pretrial phase, and under *DiMartino v. District Court*, 119 Nev. 119, 121-22, 66 P.3d 945, 946-47 (2003), potential witnesses can serve as pretrial counsel.

While the district court acknowledged Marie's argument regarding the appearance of impropriety, it reached no conclusion about whether Mark's representation created such an appearance. The district court then referred to RPC 1.7, which governs concurrent conflicts of interest, and found "that Mark['s] representation of his father will [not] provide competent and diligent representation unaffected by the fact that his mother is the adverse party." Finally, the district court cited RPC 3.7, which governs attorneys as witnesses, and concluded that the "exclusion of Mark . . . as a witness in this case will not work substantial hardship on [Theodore].[1] Therefore, Mark . . . can only serve as a witness in this case when he is disqualified or dismissed as the attorney of record." The district court ordered that Mark be disqualified as counsel, and Theodore filed this writ petition.[2]

---

[1]Presumably, the district court meant that the exclusion of Mark as an *attorney* would not work a substantial hardship on Theodore.

[2]Mark represents Theodore in the writ petition before this court. Marie requests that "serious consideration be given to striking the Petition because Mark [is representing Theodore in this petition but] has been disqualified from further representation." However, this court has permitted a disqualified attorney to represent the petitioner before this court when challenging a disqualification order, *see, e.g.*, *Nevada Yellow Cab Corp. v. Dist. Ct.*, 123 Nev. 44, 48, 152 P.3d 737, 740 (2007); *Millen v. Dist. Ct.*, 122 Nev. 1245, 1250, 148 P.3d 694, 698 (2006); *Brown v. Dist. Ct.*, 116 Nev. 1200, 1203-04, 14 P.3d 1266, 1269 (2000), and thus, we decline to strike the petition.

## DISCUSSION

In resolving this writ petition, we must determine whether representation by a child of one of the opposing parents in a divorce action creates a disqualifying appearance of impropriety, whether a nonclient has standing to assert the concurrent-conflict-of-interest rule in RPC 1.7, and whether an attorney can be disqualified during the pretrial phase based on his status as a potential witness.

### Standard for writ relief

"A writ of mandamus is available to compel performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion." *Millen v. Dist. Ct.*, 122 Nev. 1245, 1250, 148 P.3d 694, 698 (2006); *see* NRS 34.160. The extraordinary remedy of mandamus may issue only where no plain, speedy, and adequate legal remedy exists, *Millen,* 122 Nev. at 1250-51, 148 P.3d at 698; NRS 34.170, and the consideration of a petition for such relief is solely within our discretion. *Millen,* 122 Nev. at 1251, 148 P.3d at 698. We have previously indicated that a petition for mandamus relief generally is an appropriate means to challenge district court orders regarding attorney disqualification. *Id.*; *see also Nevada Yellow Cab Corp. v. Dist. Ct.*, 123 Nev. 44, 49, 152 P.3d 737, 740 (2007). Thus, we exercise our discretion to consider this writ petition.

### Mark's representation of Theodore does not create a disqualifying appearance of impropriety

Although the district court did not base its disqualification order on Mark's representation of Theodore creating an appearance of impropriety, Marie opposes writ relief on the ground that "Canon 9 of the [Model] Code of Professional Responsibility adopted by the American Bar Association provides that a lawyer should avoid *even the appearance* of professional impropriety," and the "son of opposing litigants in the same litigation cannot avoid the appearance of impropriety," particularly because Mark "has a potential pecuniary interest as a future heir."

While "Canon 9 required attorneys to 'avoid even the appearance of impropriety[,]' [t]he ABA Model Code has since been replaced by the ABA Rules of Professional Conduct, which expressly eliminated the 'appearance of impropriety' standard." *In re 7677 East Berry Ave. Associates, L.P.*, 419 B.R. 833, 845 (Bankr. D. Colo. 2009); *see also MJK Family v. Corp. Eagle Management*

*Services*, 676 F. Supp. 2d 584, 593 (E.D. Mich. 2009) (noting that while the "former Code of Professional Responsibility . . . expressly prohibited the 'appearance of impropriety[,]' . . . . [t]hat ambiguous standard has long been abandoned"); *In re Wheatfield Business Park LLC*, 286 B.R. 412, 421 (Bankr. C.D. Cal. 2002) ("Except for the states where attorney conduct is still governed by the ABA Model Code of Professional Responsibility (which the ABA Model Rules replaced in 1983), United States lawyers are no longer subject to a rule requiring them to avoid conduct that creates the appearance of impropriety."). This is significant because Nevada adopted the Model Rules of Professional Conduct with only slight variations in 1986 as SCR 150-203.5, since renumbered to track the ABA Model Rules numbering scheme. *In the Matter of Amendments to the Supreme Court Rules of Professional Conduct, SCR 150-203.5*, ADKT 370 (Order Repealing Rules 150-203.5 of the Supreme Court Rules and Adopting the Nevada Rules of Professional Conduct, February 6, 2006).

In fact, Nevada has expressly declined to adopt Canon 9 of the Model Code. *Brown v. Dist. Ct.*, 116 Nev. 1200, 1204 n.4, 14 P.3d 1266, 1269 n.4 (2000). Rather, this court has recognized that an appearance of impropriety may form a basis for attorney disqualification only in the limited circumstance of a public lawyer, and only if the appearance of impropriety is so extreme as to undermine public trust and confidence in the judicial system. *See id.* (declining to conclude that any alleged appearance of impropriety in that case met such a standard); *Collier v. Legakes*, 98 Nev. 307, 310, 646 P.2d 1219, 1221 (1982) (addressing this standard in the context of a government attorney). Thus, generally, "[a]s distinguished from judicial recusals, which may be required on the basis of a mere appearance of impropriety, such an appearance of impropriety by itself does not support a lawyer's disqualification." *DCH Health Services Corp. v. Waite*, 115 Cal. Rptr. 2d 847, 850 (Ct. App. 2002) (internal citation and quotation omitted).

*Marie lacks standing to seek Mark's disqualification pursuant to RPC 1.7*

RPC 1.7(a) prohibits a lawyer from representing a client "if the representation involves a concurrent conflict of interest." Such a conflict exists if "[t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." RPC 1.7(a)(2). However, even if a conflict arises, the rule also provides that "a lawyer may represent a client if . . . [t]he lawyer reasonably believes that the

lawyer will be able to provide competent and diligent representation to each affected client; . . . [t]he representation is not prohibited by law; . . . [and e]ach affected client gives informed consent, confirmed in writing." RPC 1.7(b)(1), (2), (4).

Before we can consider the merits of the concurrent-conflict rule, we first address Marie's standing to seek Mark's disqualification. The party seeking to disqualify bears the burden of establishing that it has standing to do so. *See, e.g., Great Lakes Const., Inc. v. Burman*, 114 Cal. Rptr. 3d 301, 307 (Ct. App. 2010). "The general rule is that only a former or current client has standing to bring a motion to disqualify counsel on the basis of a conflict of interest." Model Rules of Prof'l Conduct R. 1.7 annot. (RPC 1.7 is identical to the model rule); *see also Great Lakes Const., Inc.*, 114 Cal. Rptr. 3d at 307 ("Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney."). Marie is neither a former nor current client of Mark.

However, some courts have permitted nonclients to bring a motion to disqualify an attorney in limited circumstances. First, if the breach of ethics "so infects the litigation in which disqualification is sought that it impacts the [nonclient] moving party's interest in a just and lawful determination of her claims, she may have the . . . standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation." *Colyer v. Smith*, 50 F. Supp. 2d 966, 971-72 (C.D. Cal. 1999) (discussing prudential, as well as constitutional, standing). Here, Marie alleges simply that Mark's love for his parents impacts his ability to represent *Theodore*, not Marie. In this, Marie does not argue that Mark's representation of Theodore constitutes an ethical breach as to her or impacts any of her legal interests. Thus, Marie has failed to establish that some " 'specifically identifiable impropriety' " occurred, *Brown*, 116 Nev. at 1205, 14 P.3d at 1270 (quoting *Cronin v. District Court*, 105 Nev. 635, 641, 781 P.2d 1150, 1153 (1989), *disavowed on other grounds by Nevada Yellow Cab*, 123 Nev. at 54 n.26, 152 P.3d at 743 n.26), and " '[s]peculative contentions of conflict of interest cannot justify disqualification of counsel.' " *DCH Health Services*, 115 Cal. Rptr. 2d at 850 (quoting *Smith, Smith & Kring v. Superior Court*, 70 Cal. Rptr. 2d 507, 512 (Ct. App. 1997)). Further, to the extent that a conflict of interest existed, Theodore, Mark's only client in this matter, provided written informed consent that waived the conflict in accordance with RPC 1.7(b)(4). Because several of the Nevada Rules of Profes-

sional Conduct permit an attorney to represent a family member,[3] and no rule prohibits Mark's conduct in this case, no ethical breach "infects the litigation," *Colyer*, 50 F. Supp. 2d at 971-72, which would provide a basis for Marie to bring a motion to disqualify Mark.

Next, "[s]tanding [can] arise[ ] from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." *DCH Health Services*, 115 Cal. Rptr. 2d at 849. However, "a lawyer owes no general duty of confidentiality to nonclients." *Id.* "Thus, some sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney predicated on the actual or potential disclosure of confidential information." *Great Lakes*, 114 Cal. Rptr. 3d at 308; *see also Oaks Management Corp. v. Superior Court*, 51 Cal. Rptr. 3d 561, 571 (Ct. App. 2006) ("'[W]hen no attorney-client relationship exists '[m]ere exposure to the confidences of an adversary does not, standing alone, warrant disqualification.'" (second alteration in original) (quoting *In re Complex Asbestos Litigation*, 283 Cal. Rptr. 732, 742 (Ct. App. 1991))).

Mark and Marie's mother-son relationship, standing alone, does not establish a confidential relationship. *See U.S. v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) ("'[M]ore than the gratuitous reposal of a secret to another who happens to be a family member is required to establish a fiduciary or similar relationship of trust and confidence."); *Latty v. St. Joseph's Society*, 17 A.3d 155, 161 (Md. Ct. Spec. App. 2011) ("While some confidential relationships arise if there is a familial relationship, 'the mere existence of a familial relationship is not indicative of a confidential relationship.'" (quoting *Orwick v. Moldawer*, 822 A.2d 506, 512 (Md. Ct. Spec. App. 2003))); *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 718 (Va. 2000) ("A parent-child relationship, standing alone, is insufficient to create a confidential or fiduciary relationship."). And although a fiduciary relationship "is particularly likely to exist when there is a family relationship," *Perry v. Jordan*, 111 Nev. 943, 947, 900 P.2d 335, 338 (1995), "[a] family relationship, of itself, does not create a fiduciary relationship" unless it is established by additional facts. *Simpson v. Dailey*, 496 A.2d 126,

---

[3]For example, RPC 1.8(c) prohibits a lawyer from soliciting a substantial gift from the client, unless the lawyer "is related to the client." RPC 7.3(a) prohibits an attorney from "solicit[ing for pecuniary gain] professional employment from a prospective client with whom the lawyer has no family . . . relationship."

128 (R.I. 1985); *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 508 (Tex. 1980). Rather, "[w]hether a confidential relationship exists for a parent-child . . . is an issue of fact and is not presumed as a matter of law." *Latty*, 17 A.3d at 161 (internal quotations omitted); *see also Dino v. Pelayo*, 51 Cal. Rptr. 3d 620, 624 (Ct. App. 2006) ("Whether a confidential relationship exists [for purposes of nonclient standing] is a question of fact.").

Neither party argues that Mark and Marie share some type of legally recognizable confidential relationship, and Marie offered no evidence to the district court that Mark acquired any privileged, confidential information from Marie. In *Brown*, this court concluded that "disqualification is not warranted absent proof of a reasonable probability that counsel *actually acquired* privileged, confidential information." 116 Nev. at 1202, 14 P.3d at 1267 (emphasis added). Similarly, in the context of familial relationships, other courts have declined to disqualify counsel absent proof that counsel actually acquired confidential information from a family member. *See, e.g., Addam v. Superior Court*, 10 Cal. Rptr. 3d 39, 42 (Ct. App. 2004) (holding in a marital dissolution action that a sibling relationship between a husband's attorney and a wife's former physician was insufficient to disqualify the attorney and explaining that "[the attorney's] brother presumably possesses confidential information relating to [the] wife; but there is no evidence that he disclosed any such information to his sister"); *DCH Health Services*, 115 Cal. Rptr. 2d at 850-51 (declining to disqualify an attorney whose wife obtained confidential information about the adverse party and noting that "[s]ociety has entrusted lawyers with confidences, and we should not assume that lawyers will violate these confidences when involved in particular relationships"). Thus, Marie has not established that she shared a confidential or fiduciary relationship with Mark sufficient to give her standing to seek his disqualification.

Nor has Marie demonstrated that Mark has a disabling "pecuniary interest" in the couple's estate. While all children may have an expectancy in their parents' estate, no child has a pecuniary right to his or her parents' estate. *See, e.g., In re Estate of Melton*, 128 Nev. 34, 46-47, 272 P.3d 668, 677 (2012) (explaining that under certain circumstances, disinheritance clauses can be enforced); NRS 133.170 (omission of a child from a will is deemed intentional). And even if Marie had demonstrated such an interest, a pecuniary interest, without more, does not create a confidential or fiduciary relationship requiring disqualification. Thus, while a child's decision to represent one of his or her parents in a divorce

proceeding may appear unusual, we conclude that Marie's argument lacks merit.

*Mark's status as a potential witness during the pretrial phase does not warrant disqualification*

While RPC 3.7(a) prohibits, with exceptions, a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness," we have previously determined that RPC 3.7 does not disqualify an attorney from the case entirely. In *DiMartino v. District Court*, 119 Nev. 119, 66 P.3d 945 (2003), this court held that RPC 3.7 "does not mandate complete disqualification of an attorney who may be called as a witness; by its plain terms, [it] simply prohibits the attorney from appearing as trial counsel." *Id.* at 121, 66 P.3d at 946. Thus, this court held that "a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage." *Id.* at 121-22, 66 P.3d at 946-47. Because of this court's holding in *DiMartino*, we conclude that the district court manifestly abused its discretion when it disqualified Mark based on his status as a potential witness when the case had not yet reached the trial phase.

Accordingly, we conclude that the district court manifestly abused its discretion when it disqualified Mark. *Nevada Yellow Cab Corp. v. Dist. Ct.*, 123 Nev. 44, 54, 152 P.3d 737, 743 (2007) ("[A] district court's discretion in [disqualification] matters is broad and . . . its decision will not be set aside absent a manifest abuse of that discretion."). We grant Theodore's petition for extraordinary relief and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order granting Marie's motion to disqualify Mark as Theodore's counsel.[4]

CHERRY, C.J., and PICKERING, J., concur.

---

[4]We deny Marie's request to strike portions of the writ petition and the corresponding appendix.