130 Nev., Advance Opinion 18

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA, Petitioner, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE STEFANY MILEY, DISTRICT JUDGE, Respondents, and JIHAD ANTHONY ZOGHEIB, Real Party in Interest. | No. 62615 <br><br> **FILED** <br><br> MAR 27 2014 <br><br> TRACIE K. LINDEMAN <br> CLERK OF SUPREME COURT <br> BY_____ <br> CHIEF DEPUTY CLERK  |

Original petition for a writ of mandamus challenging a district court order that granted the defendant's motion to disqualify the Clark County District Attorney's Office.

*Petition granted.*

Catherine Cortez Masto, Attorney General, Carson City; Ryan J. MacDonald, Deputy District Attorney, Clark County, for Petitioner.

Lucherini Law and Robert G. Lucherini, Las Vegas, for Real Party in Interest.

---

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Clark County District Attorney Steven Wolfson was a criminal defense attorney before being appointed to the elective office he currently

[left margin footnote] ¹This opinion has been circulated among all justices of this court, any two of whom, under IOP 13(b), may request en banc review of a case. The two votes needed to require en banc review in the first instance of the question of overruling *Collier v. Legakes*, 98 Nev. 307, 646 P.2d 1219 (1982), were not cast.

7/17/14: Corrected per letter to publishers. CJ
4/1/14: Opinion modified by order. CJ

14-09684

holds. The transition from defense counsel to head of a prosecutor's office results in a conflict of interest under Nevada Rule of Professional Conduct 1.9 that, depending on the circumstances, disqualifies Wolfson from prosecuting his former clients. The question presented in this original proceeding is whether that conflict of interest was properly imputed to all of the lawyers in his office, requiring the disqualification of the Clark County District Attorney's Office. In answering that question, we consider whether the appearance-of-impropriety standard used by this court in *Collier v. Legakes*, 98 Nev. 307, 646 P.2d 1219 (1982), to determine when an individual prosecutor's conflict should be imputed to all of the lawyers in the prosecutor's office has been undermined by our subsequent adoption of the Model Rules of Professional Conduct. We conclude that the appearance-of-impropriety standard is not the correct standard because it was based on an ethical rule that this court never adopted. The more appropriate standard is whether the individual lawyer's conflict would render it unlikely that the defendant would receive a fair trial unless the conflict is imputed to the prosecutor's office. For the reasons discussed in this opinion, regardless of which standard is applied, the district court acted arbitrarily or capriciously in granting the motion to disqualify the Clark County District Attorney's Office. We therefore grant the petition.

*FACTS AND PROCEDURAL HISTORY*

The State charged real party in interest Jihad Anthony Zogheib with conspiracy to commit a crime, passing a bad check with intent to defraud, forgery, and two counts of theft. After Steven Wolfson was appointed District Attorney, Zogheib moved to disqualify the Clark County District Attorney's Office based on a conflict of interest: an

attorney in Wolfson's former law firm, Patrick McDonald, represented Zogheib in the instant case.

The district court held several evidentiary hearings regarding the motion to disqualify.[2] According to the district court's order, the evidentiary hearing showed that while Wolfson was not Zogheib's attorney, he was involved in discussions regarding the case. McDonald testified that he spoke frequently with Wolfson regarding Zogheib's case because Wolfson had successfully litigated multiple check and marker fraud cases in his career. Wolfson testified that he remembered Zogheib's case and that he had probably talked with McDonald and Zogheib in the past. He also testified that after accepting the appointment as district attorney, he never made an appearance on this case, never obtained or reviewed discovery on this case, and never discussed this case with the deputy district attorney appointed to prosecute the case.

After hearing the testimony at the evidentiary hearing, the district court determined that the Clark County District Attorney's Office should be disqualified. The district court concluded that there was a conflict of interest between Wolfson and Zogheib and that the conflict

---

[2]The hearings were sealed because they involved attorney-client privilege. Neither party has asked to file an appendix under seal containing the transcripts, to have the hearings unsealed, or to have the district court transmit a transcript of the hearings under seal for this court to consider. The statements in this opinion regarding the content of the testimony presented at those hearings are based on the findings set forth in the district court's written order.

should be imputed to the office because there was an appearance of impropriety that was so great as to make this an extreme case that warranted vicarious disqualification even though Wolfson had been effectively screened from participating in the case. This original petition for a writ of mandamus followed.

## DISCUSSION

Mandamus is an extraordinary remedy, and the decision to entertain a petition for a writ of mandamus rests within our discretion. *See Poulos v. Eighth Judicial Dist. Court*, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982); *see also State ex rel. Dep't of Transp. v. Thompson*, 99 Nev. 358, 360, 662 P.2d 1338, 1339 (1983). We have indicated that mandamus is the appropriate vehicle for challenging attorney disqualification rulings. *See generally Collier v. Legakes*, 98 Nev. 307, 646 P.2d 1219 (1982). But "[t]he disqualification of a prosecutor's office rests with the sound discretion of the district court," *id.* at 309, 646 P.2d at 1220, and "while mandamus lies to enforce ministerial acts or duties and to require the exercise of discretion, it will not serve to control the proper exercise of that discretion or to substitute the judgment of this court for that of the lower tribunal," *id.* at 310, 646 P.2d at 1221. Accordingly, where the district court has exercised its discretion, a writ of mandamus is available only to control an arbitrary or capricious exercise of discretion. *See Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). "An arbitrary or capricious exercise of discretion is one founded on prejudice or preference rather than on reason, or contrary to the evidence or established rules of law." *State v. Eighth Judicial Dist.*

*Court (Armstrong)*, 127 Nev. \_\_\_, \_\_\_, 267 P.3d 777, 780 (2011) (internal citation and quotation marks omitted).

The State conceded that Wolfson has a conflict of interest that disqualifies him from representing the State against Zogheib in the underlying criminal prosecution. RPC 1.9. Generally one attorney's conflict of interest under Nevada Rule of Professional Conduct 1.9 is imputed to all other attorneys in the disqualified attorney's law firm. RPC 1.10. But that general rule does not apply to lawyers working in government offices. The disqualification of lawyers who are government officers and employees based on a conflict of interest is governed by Nevada Rule of Professional Conduct 1.11, not Rule 1.10. Paragraph (d) of Rule 1.11 addresses lawyers who are current government officers and employees and "does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers." Model Rules of Prof'l Conduct R. 1.11 cmt. 2 (2012).[3]

Our primary decision addressing the disqualification of government lawyers was issued several years before we adopted the Nevada Rules of Professional Conduct. In *Collier v. Legakes*, 98 Nev. 307,

---

[3] Rule 1.11 is based on the identically numbered ABA Model Rule. As provided in Nevada Rule of Professional Conduct 1.0A, the "comments to the ABA Model Rules of Professional Conduct . . . may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct, unless there is a conflict between the Nevada Rules and the . . . comments."

646 P.2d 1219 (1982), we held that "[t]he disqualification of a prosecutor's office rests with the sound discretion of the district court" and that when exercising its discretion, the district court "should consider all the facts and circumstances and determine whether the prosecutorial function could be carried out impartially and without breach of any privileged communication." *Id.* at 309-10, 646 P.2d at 1220. The State conceded that a conflict exists between Wolfson and Zogheib because Wolfson received confidential information during his firm's representation of Zogheib. In *Collier*, this court cited authorities indicating that vicarious-disqualification rules at the time were not strictly applied to government offices and held that vicarious disqualification of a prosecutor's office may be required "in extreme cases where the appearance of unfairness or impropriety is so great that the public trust and confidence in our criminal justice system could not be maintained without such action." *Id.* at 310, 646 P.2d at 1221.

The overarching question is whether Wolfson's conflict should be imputed to all of the lawyers in the district attorney's office. However, before answering that question, we must address a threshold issue raised by the State: whether the appearance-of-impropriety standard espoused in *Collier* should be reconsidered in light of our adoption of the Model Rules of Professional Conduct and our more recent decisions in *Liapis v. Second Judicial District Court*, 128 Nev. ___, ___, 282 P.3d 733, 736-37 (2012), and *Brown v. Eighth Judicial District Court*, 116 Nev. 1200, 1204 n.4, 14 P.3d 1266, 1269 n.4 (2000).

This court, in applying the appearance-of-impropriety standard in *Collier*, relied on *State v. Tippecanoe County Court*, 432

N.E.2d 1377, 1379 (Ind. 1982), which cited Canon 9 of the ABA Model Code of Professional Responsibility. *Collier*, 98 Nev. at 310, 646 P.2d at 1220-21. Canon 9 required attorneys to avoid even the appearance of impropriety. *Liapis*, 128 Nev. at ___, 282 P.3d at 736. In 1983, the ABA Model Code of Professional Responsibility was replaced by the Model Rules of Professional Conduct, which did not include Canon 9. *Id.* In 1986, four years after *Collier*, this court adopted the Model Rules of Professional Conduct with only slight variations as SCR 150-203.5, which were later renumbered to track the ABA Model Rules numbering scheme. *Id.*; *In the Matter of Amendments to the Supreme Court Rules of Prof'l Conduct*, SCR 150-203.5, ADKT 370 (Order Repealing Rules 150-203.5 of the Supreme Court Rules and Adopting the Nevada Rules of Professional Conduct, February 6, 2006). Despite these changes and our refusal to adopt Canon 9, our recent decisions in *Liapis* and *Brown* identify the rule set forth in *Collier* as the only limited circumstance in which an appearance of impropriety may form a basis for attorney disqualification. *Liapis*, 128 Nev. at ___, 282 P.3d at 737; *Brown*, 116 Nev. at 1204 n.4, 14 P.3d at 1269 n.4. With *Collier* noted as the exception, *Liapis* states a general rule that an appearance of impropriety by itself does not support a lawyer's disqualification. 128 Nev. at ___, 282 P.3d at 737. The carve-out of *Collier* from that general rule understandably creates some confusion.

Some courts have continued to apply the appearance-of-impropriety standard while noting that the American Bar Association and the Model Rules no longer recognize it. *State v. Retzlaff*, 490 N.W.2d 750, 752 (Wis. Ct. App. 1992) (explaining that "[t]he obligation to avoid appearances of impropriety is nonetheless implicit in the new Wisconsin

Rules of Professional Conduct" and "[w]hile the appearance of impropriety is not a basis for automatic disqualification, it is an element that the trial court may consider in making disqualification determinations" and may be the basis for disqualifying counsel "if the conduct is sufficiently aggravated"); *Gomez v. Superior Court*, 717 P.2d 902, 904 (Ariz. 1986) (explaining that even though recently adopted Arizona Rules of Professional Conduct omitted "appearance of impropriety," "[i]t would appear . . . that 'appearance of impropriety'" nonetheless "survives as a part of conflict of interest and an appearance of impropriety should be enough to cause an attorney to closely scrutinize his conduct" even if "[i]t does not necessarily follow that it must disqualify him in every case"). Other courts and some legislatures have rejected the appearance-of-impropriety standard. In some instances, recusal is required only if the conflict would render it unlikely that the defendant would receive a fair trial. Cal. Penal Code § 1424(a)(1) (West 2011); *State v. Cope*, 50 P.3d 513, 515-16 (Kan. Ct. App. 2002); *People v. C.V.*, 64 P.3d 272, 275 (Colo. 2003) (finding that while the appearance of impropriety may be used to disqualify a prosecutor's office, a trial court "should focus on whether disqualification appears reasonably necessary to ensure 'the integrity of the fact-finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system'" (quoting *People v. Garcia*, 698 P.2d 801, 806 (Colo. 1985))). Other courts have gone further, finding that a mere appearance of impropriety is not enough and that a showing of actual prejudice to the defendant is required. *Schumer v. Holtzman*, 454 N.E.2d 522, 526 (N.Y. 1983); *Wilkey v. State*, 953 P.2d 347, 348-49 (Okla. Crim.

App. 1998); *Haywood v. State*, 344 S.W.3d 454, 462-63 (Tex. Crim. App. 2011).

We are not convinced that appearance of impropriety is the appropriate standard for determining whether an individual prosecutor's conflict should be imputed to an entire office. First, that standard is not implicit in the current Nevada Rules of Professional Conduct. Second, there are several policy arguments in favor of a test that limits the disqualification of an entire district attorney's office: there is a large cost to the county in paying for a special prosecutor to prosecute the case; an attorney is presumed to perform his ethical duties, including keeping the confidences of a former client; *State v. Pennington*, 851 P.2d 494, 498 (N.M. Ct. App. 1993); *State v. Cline*, 405 A.2d 1192, 1206 (R.I. 1979); and the courts should not unnecessarily interfere with the performance of a prosecutor's duties, *State v. Camacho*, 406 S.E.2d 868, 872 (N.C. 1991). These are the same policy considerations that informed the decision to exempt government offices from imputed conflicts. Model Rules of Prof'l Conduct R. 1.11 cmt. 2 (2012) ("Rule 1.10 is not applicable to the conflicts of interest addressed by this Rule . . . [b]ecause of the special problems raised by imputation within a government agency."); Model Rules of Prof'l Conduct R. 1.11 cmt. 4 (2012) ("[T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards."). Using a standard that is as ambiguous as the appearance-of-impropriety standard, *see MJK Family L.L.C. v. Corporate Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584,

593 (E.D. Mich. 2009) (noting that while the "former Code of Professional Responsibility . . . expressly prohibited the 'appearance of impropriety[,]' . . . . [t]hat ambiguous standard has long been abandoned"), could result in many unnecessary disqualifications, limit mobility from private practice, and restrict the assignment of counsel when no breach of confidences has occurred. *Camacho*, 406 S.E.2d at 874; *United States v. Goot*, 894 F.2d 231, 236 (7th Cir. 1990) (concerned with the government's ability to attract good attorneys). For these reasons, we overrule *Collier* to the extent that it relies on appearance of impropriety to determine when vicarious disqualification of a prosecutor's office is warranted.

There is, however, a broader concern in criminal cases that cannot be overlooked: the defendant's right to a fair trial. Based on that concern we agree with *Collier* that an individual prosecutor's conflict of interest may be imputed to the prosecutor's entire office in extreme cases. But rather than making that determination based on an appearance of impropriety, we conclude that the appropriate inquiry is whether the conflict would render it unlikely that the defendant would receive a fair trial unless the entire prosecutor's office is disqualified from prosecuting the case. *See, e.g., Cope*, 50 P.3d at 515-16. This approach strikes the correct balance between the competing concerns of the State and the right of the defendant to a fair trial.

Regardless of the standard applied in this case, we conclude that the district court acted arbitrarily or capriciously in granting the motion to disqualify. The district court concluded that because the district

attorney is the one who has the conflict and is the head of the office, the entire office must be disqualified.[4] The district court made this finding despite also finding that the screening procedures in place at the Clark County District Attorney's Office were sufficient to ensure that Wolfson had no involvement in the prosecution.[5]

---

[4]The district court relied on a California case, *City and County of San Francisco v. Cobra Solutions, Inc.*, 135 P.3d 20 (Cal. 2006), to find that when the conflict is with the head of the office, the entire office must be disqualified regardless of whether there were proper screening procedures in place. There are several reasons that the district court's reliance on this case was problematic. First, *Cobra Solutions* is a civil case, and California has a criminal penal code section in place that applies in criminal cases that is different than the standard set forth for civil cases. Cal. Pen. Code § 1424 (West 2011). California courts have specifically stated that the reasoning used in *Cobra Solutions* does not apply in criminal cases. *Spaccia v. Superior Court*, 146 Cal. Rptr. 3d 742, 753 (Ct. App. 2012). Second, California has not adopted the ABA Model Rules of Professional Conduct, which specifically allows the screening of conflicted attorneys who serve as public officers or employees. *Cobra Solutions*, 135 P.3d at 29; Model Rules of Prof'l Conduct R. 1.11 (2012). While California does allow for the screening of employees of a government agency, it does not allow for the screening of the head public officer of the agency. *Cobra Solutions*, 135 P.3d at 29. This is in contrast to the rules of professional conduct adopted in Nevada, which do allow for the screening of a public officer. RPC 1.11. Therefore, the district court's reliance on this case was misplaced.

[5]We note that the district court concluded that Wolfson had not acted unethically in this matter. Within this conclusion, the district court indicated that it considered the screening procedures, thereby demonstrating that the district court believed the screening procedures were adequate to ensure that Wolfson would have no involvement in the prosecution.

The district court erred when it concluded that this case was different than the situation presented in *Collier*. The district court focused on the district attorney's role as the head of the office: his name is on every pleading, and he is in charge of policymaking for the office. *See* NRS 173.045; NRS 252.070(1). But the chief deputy involved in *Collier* had much more hands-on responsibility for the cases handled by the office than the district attorney in this case does. While it is true that the district attorney is responsible for deciding the overall policy of the office, consistent with NRS 252.070(1), the deputies appointed by the district attorney handle the day-to-day operations of the divisions of the office and make decisions regarding specific cases. And even though the district attorney's name appears on every document filed with the court, it is clear that the district attorney is not personally handling all of the cases filed by his office, and that the individual cases are instead handled by the deputy who is also listed on every document. In these circumstances and considering the screening procedures in place at the district attorney's office, the district court acted arbitrarily or capriciously because, applying the *Collier* standard, no appearance of impropriety existed to such an extent that it would undermine the public trust and confidence in the criminal justice system and, applying the standard adopted in this opinion, there has been no demonstration that the Clark County District Attorney's Office's continued participation in the prosecution of Zogheib would render it unlikely that Zogheib would receive a fair trial.

Supreme Court
OF
Nevada

(O) 1947A

12

We grant the petition. The clerk of this court shall issue a writ of mandamus directing the district court to vacate its order disqualifying the Clark County District Attorney's Office.[5][6]

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cherry

---

[5][6]We previously stayed the proceedings in district court pending our resolution of this original proceeding. Given our resolution of the original proceeding in this opinion, we deny the State's motion to dissolve the stay as moot. To the extent that Zogheib's opposition to the State's motion raises factual allegations that were not presented to the district court regarding the merits of the motion to disqualify the district attorney's office, we have not considered them.